# EXHIBIT A

# STATE COURT DOCUMETS



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 32745035**
**Date Processed: 11/20/2025**

| | |
|---|---|
| **Primary Contact:** | Julie Heine<br>Seyfarth Shaw LLP - Equifax<br>1075 Peachtree St NE<br>Ste 2500<br>Atlanta, GA 30309-3958 |
| **Electronic copy provided to:** | Dana Hantack<br>Jessica Wiles<br>Kristin Zielmanski<br>Jessica Spurlock<br>Legal Department<br>Marteese White<br>Nadia Reynaga-Moreno<br>Janise Jordan<br>Deborah Fataki<br>Mackenzie Cole<br>Laura Ratliff<br>Trent McNeill<br>Luke Donohue<br>Dee Davis<br>Nadia Jenkins-Bey<br>Elisa Lyons<br>Mary Stokes |
| **Entity:** | Equifax Information Services LLC<br>Entity ID Number  0635578 |
| **Entity Served:** | Equifax Information Services LLC |
| **Title of Action:** | Chad Christian Cousins vs. Equifax Information Services, LLC |
| **Matter Name/ID:** | Chad Christian Cousins vs. Equifax Information Services, LLC (18234933) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Violation of State/Federal Act |
| **Court/Agency:** | Greenville County Court of Common Pleas, SC |
| **Case/Reference No:** | 2025-CP-23-07520 |
| **Jurisdiction Served:** | South Carolina |
| **Date Served on CSC:** | 11/20/2025 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Dave Maxfield, Attorney, LLC<br>803-509-6800 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Dave Maxfield, Attorney, LLC
PO Box 11865
Columbia SC 29211-1865



**USPS CERTIFIED MAIL**

9214 8901 4298 0434 6776 95

0012864849000011
VIA CERTIFIED MAIL
CORPORATION SERVICE COMPANY
100 Coastal Drive, Suite 210
Charleston SC 29492

# See Important Information Enclosed



**davemaxfield**
CONSUMER PROTECTION LAW

Dave Maxfield, Attorney, LLC
Phone: 803.509.6800
Toll Free Fax: 855.299.1656
Web: consumerlawsc.com

Mailing Address:
P.O. Box 11865
Columbia, SC 29211

Physical Address:
SOCO 80808 Building
808 D Lady Street
Columbia, SC 29201

*Member, National Association of Consumer Advocates*
*Member, Public Investors Arbitration Bar Association*

November 17, 2025

**VIA CERTIFIED MAIL**
CORPORATION SERVICE COMPANY
100 Coastal Drive, Suite 210
Charleston, South Carolina  29492

RE:  Chad Christian Cousins v. Equifax Information Services, LLC, Trans Union LLC, Experian Information Solutions, Inc., and Maximus Education,
Case No. 2025-CP-23-07520

Dear Sir or Madam:

Enclosed herewith and served upon you on behalf of **Equifax Information Services LLC** is a filed copy of a **Summons & Complaint** in the above matter.

Sincerely,

s/ Kristy Woodward
Paralegal to Dave Maxfield

Enc.

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF GREENVILLE | THIRTEENTH JUDICIAL CIRCUIT |
| CHAD CHRISTIAN COUSINS, | |
| Plaintiff, | |
| -vs- | Case No. |
| EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and MAXIMUS EDUCATION, LLC d/b/a AIDVANTAGE, | **SUMMONS** |
| Defendants. | |

TO:   THE DEFENDANT(S) ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served upon you and to serve a copy of your Answer to the said Complaint on the subscriber, David A. Maxfield, Esquire, at his office at P.O. Box 11865, Columbia, South Carolina 29211, within thirty (30) days after service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the court for the relief demanded in the Complaint. If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the Complaint.

DAVE MAXFIELD, ATTORNEY, LLC

s/ David A. Maxfield

Dave Maxfield, Esq., SC Bar No. 7163
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

DATED: November 13, 2025

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF GREENVILLE | THIRTEENTH JUDICIAL CIRCUIT |

CHAD CHRISTIAN COUSINS,

Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES, LLC, COMPLAINT
TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and MAXIMUS EDUCATION, LLC d/b/a AIDVANTAGE,

Defendants.

**COMPLAINT**

(Jury Trial Requested)

Plaintiff, complaining of the Defendants above named, would respectfully show:

### JURISDICTION & VENUE

1. The State of Residence of Plaintiff is South Carolina.
2. Equifax Information Services, LLC is a foreign corporation with its principal place of business, "nerve center" and headquarters in the State of Georgia.
3. Trans Union, LLC ("Trans Union") is a foreign corporation with its principal place of business, "nerve center" and headquarters in the State of Illinois.
4. Experian Information Solutions, Inc. ("Experian") is a foreign corporation with its principal place of business, "nerve center" and headquarters in the State of Texas.
5. Maximus Education, LLC d/b/a Aidvantage ("Aidvantage") is a Student Loan Servicer operating from an address of P.O. Box 300001, Greenville, TX 75403-3001.
6. This Court has jurisdiction over the parties and subject matter of this action and venue is proper.

### INTRODUCTION

7. Plaintiff Chad Christian Cousins is a resident of Greenville, South Carolina. He is the CEO of a private equity owned firm, works to maintain good credit for both personal and

1

professional purposes, and has consistently maintained an excellent credit score for decades.

8. Defendant Credit Reporting Agencies (Equifax, Trans Union, and Experian, collectively "CRAs" or "Agencies") collect information relevant to nearly all consumers' credit and financial history. When a consumer applies for a loan, requests an increase on a credit limit or even applies for a new job, lenders and prospective employers use the consumer's report to rate that consumer's "reliability."

9. The information in reports comes from the lenders, loan servicers or employers, who report information about consumers to Agencies.

10. Aidvantage, according to information it publishes about itself, is a private company operating as a federal contractor serving as a federal student loan servicer that manages the servicing of Department of Education-owned loans.

11. Aidvantage regularly reports information about thousands of consumers to the Credit Reporting Agencies.

12. All Defendants know, or should know, that false information in a credit report can have a disastrous effect on a consumer's financial, physical and emotional wellbeing.

13. Because of the importance of accurate credit and danger of false information, Congress passed the Fair Credit Reporting Act (FCRA).

14. The FCRA requires Credit Reporting Agencies (Equifax, Trans Union and Experian) to implement procedures to assure the "Maximum Possible Accuracy" of the information they report to protect consumers from the harm caused by of false information. If notice is received from a consumer that information is disputed, Agencies must investigate to determine whether the disputed information can be verified. This often, but does not always, includes contacting the party who provided the information.

15. The FCRA also requires that servicers like Aidvantage who provide information to the agencies must assure that it is correct. If notice is received from an Agency that a consumer disputes the information, servicers like Aidvantage must investigate to verify its accuracy.

16. Given the potential harm of false information, never can these investigations be cursory or superficial but must be detailed and systematic examinations of the information in the Agency's or Servicer's file to determine if the information it is reporting is true.

17. False information can appear in any consumer's credit report in a variety of ways, including "mixed" information (where two consumers have similar names or other demographic information) and through identity theft.

18. From the consumer's perspective, it is often difficult or impossible to tell how an account he never opened or used came to appear on his credit file, with misattributed information looking the same as identity theft.

19. If a Credit Reporting Agency reports false information or if, after reinvestigation, an Agency or servicer "verifies" false information as true in violation of the Act, they are responsible for the damages.

## FACTS

20. Upon information and belief, in or around September 2020, someone used Plaintiff's personal identifying information without his knowledge or consent to fraudulently obtain a federal student loan purportedly for attendance at Golden State University.

21. Plaintiff never applied to or attended Golden State University.

22. Upon information and belief, a fraudulent federal student loan in the principal amount of $10,250 (with interest bringing the total to approximately $11,057) was disbursed on or about September 21, 2020, in connection with the fraudulent application, and was purportedly associated with natural disaster (COVID) relief.

23. The fraudulent loan documents and correspondence were sent to an address at 410 Victory Garden Dr. Apt 208, Tallahassee, FL 32301, where Plaintiff does not reside and has never resided.

24. Plaintiff did not authorize the use of a Florida address for any loan applications, did not receive any loan proceeds, and did not benefit from this loan in any way.

25. Plaintiff never signed any promissory notes or loan applications, electronically or in ink, for this loan.

26. Plaintiff graduated from Clemson University in December 1995. Neither Plaintiff nor his wife have been enrolled, attended, or had any financing associated with a higher education institution since that time. Neither of Plaintiff's sons, Nathan and James Caleb, both Clemson graduates, had any student loans associated with their enrollment or tuition.

27. This fraudulent loan became serviced by Defendant Aidvantage.

28. Defendant Aidvantage has, in its file, applications, demographic, banking, and servicing information that clearly demonstrate that the account does not pertain to Plaintiff, including documentation showing the loan was for attendance at an institution in a state where Plaintiff has not resided since at least 1993, to an address where Plaintiff never lived, and opened in 2020 during a period when Plaintiff had no enrollment in any educational institution.

29. On or about July 16, 2025, while purchasing a vehicle for his wife at Greenville Lexus, Plaintiff was alarmed and surprised to be advised that his credit score had dropped to 715, down from his consistently maintained score exceeding 850. The dealer showed Plaintiff a fraudulent student loan account associated with Dept of Ed/Aidvantage for $10,250 and a reported balance of $11,057, showing recently delinquent 120+ days.

30. Frustratingly, as there was no means to contest the issue at the dealership apart from what was reported by the credit agencies, this issue forced Plaintiff to close the financing of the vehicle at a higher interest rate than would have been provided to him with his correct credit score absent this fraudulent item.

31. On July 17, 2025, Plaintiff obtained his credit reports from TransUnion and Equifax. All credit reporting agencies showed the Aidvantage account, allegedly opened in 2020, and an associated address in Tallahassee, FL at which Plaintiff has not resided.

3

32. Plaintiff also contacted Defendant Aidvantage at the toll-free number 800-722-1300 listed in the credit reports. After providing his Social Security number, birth date, and the account number, an Aidvantage representative, Brianne, advised that the account was in Plaintiff's first and last name, associated with his SSN, and addressed to 410 Victory Garden Dr. Apt 208, Tallahassee, FL., a $10,250 individual student loan associated with natural disaster (COVID), opened 9/21/2020, delinquent as of 3/25/2025.

33. The representative verbally agreed that this appeared to be fraud, placed the account into a 60-day forbearance, and advised Plaintiff to submit written disputes to Aidvantage and to the credit reporting agencies.

34. On or about August 28, 2025, Plaintiff filed written disputes with all three Credit Reporting Agencies, providing a copy of his South Carolina driver's license, a detailed explanation that he was a victim of identity theft, a copy of his police report, and an FTC Identity Theft Report, clearly stating that he never opened the fraudulent account and never attended the institution.

35. Plaintiff placed credit freezes on his credit reports with all three agencies.

36. Despite demographic information in their files that clearly did not belong to Plaintiff (including an address in Florida, a state which Plaintiff last lived in more than 30 years ago), the Agencies did nothing apart from re-routing the disputes to Aidvantage who, predictably, "verified" that the loan belonged to Plaintiff.

37. On or about September 9, 2025, Equifax sent Plaintiff responses declining to block the fraudulent account from his credit report.

38. On or about September 14, 2025, Equifax sent Plaintiff dispute results which deleted the fraudulent Tallahassee address but verified the fraudulent Aidvantage account as belonging to Plaintiff.

39. On or about September 25, 2025, Experian sent Plaintiff a response stating the fraudulent Aidvantage account had been "verified as accurate" and the disputed Tallahassee address remains on his Experian file.

40. On or about September 2, 2025, TransUnion received Plaintiff's dispute.

41. Over the past several months, the pattern has continued. Aidvantage continues to report the fraudulent account as Plaintiff's to the Agencies and continues to deny Plaintiff's direct appeals.

42. To this day, Aidvantage continues to assert that the fraudulent loan is Plaintiff's and continues to report it to his credit file.

43. Besides asserting Plaintiff's liability on the debt he did not incur, Defendant Aidvantage continues to report the account to Defendants Equifax, Experian and Trans Union without mention of the fact it is disputed by Plaintiff, as required by law.

44. Aidvantage has been sued in multiple jurisdictions by other consumers for the same treatment and disregard of its obligations under the FCRA, and its evasive and nonchalant response to Plaintiff in this case appears routine.

45. The false information on Plaintiff's credit reports continues to appear, showing him responsible for over $11,000 in student loan debt for an institution he never attended.

4

6:25-cv-13935-DCC     Date Filed 12/19/25     Entry Number 1-1     Page 10 of 16

46. Besides the fraudulent Aidvantage account, Defendant Agencies continue to attribute to Plaintiff the address in Tallahassee, Florida and other false demographic information.

47. As a direct and proximate result of the above, Plaintiff is being falsely held responsible for approximately $11,057 in student loan debt incurred at an institution he never attended, has false information in his credit reports, and false demographic information.

48. The wrongful acts of the Defendants described caused the following concrete and particularized harms and losses:

> a. Emotional distress including humiliation, fear, worry, anxiety, and depression, and the physical manifestations of same;
>
> b. Loss of enjoyment of life's normal activities;
>
> c. Lost time spent attempting to rectify the harm caused;
>
> d. Harm to existing and/or prospective credit;
>
> e. Payment of higher interest rate on vehicle financing;
>
> f. Harm to reputation, particularly given Plaintiff's position as CEO of a private equity owned firm;
>
> g. Loss of fundamental right to privacy and/or the right to be left alone;
>
> h. Potential professional harm given Plaintiff's role as CEO and routine investor in commercial and residential real estate which may rely on financing, background screens, or personal guarantees for transactions;
>
> i. Such other harms and losses as may be shown at trial.

49. Defendants must pay all sums needed to compensate for all harms and losses proximately caused by the wrongful acts described, to return Plaintiff to the position enjoyed before wrongful injury.

50. For those harms and losses reasonably expected to continue, Defendants must compensate for their expected continuing impact and effect.

51. And due to the intentional or reckless nature of the wrongful acts described, Defendants must pay nominal or symbolic damages, and punitive damages to punish said conduct, and deter its reoccurrence.

52. Defendants must further be required to pay attorney's fees and costs, and the penalties mandated by its violation of important statutory rights referenced below.

53. The harms and losses caused by Defendants are likely to be redressed by a favorable judicial decision, through an award of the above damages, assessment of fines and punitive damages, an award of attorney's fees and all litigation costs.

54. Plaintiff further requests injunctive relief for the removal of the Aidvantage account that is not his from his credit file as, having exhausted every means of trying to remove this account on his own, he has no other recourse but this Court's intervention.

### FOR A FIRST CAUSE OF ACTION AS TO DEFENDANT AIDVANTAGE
### (Violation of FDCPA, 15 USC §1692)

55. The allegations contained hereinabove are repeated as if alleged herein verbatim, to the extent not inconsistent.

56. The definition of consumer in the Act (or judicial interpretations of same) applies to Plaintiff.

57. The definition of "debt collector" contained in the Act (or judicial interpretations of same) applies to Defendant Aidvantage.

58. The conduct of Defendant Aidvantage involves an attempt to collect a "debt" as the Act defines it.

59. Attempts to collect debts alleged to be due another are made regularly by Defendant.

60. Defendant violated the Act in these particulars, and such others as shown:

    a. Defendant falsely represented the character, amount, or legal status of the debt;

    b. Defendant falsely represented or threatened to take any action that cannot legally be taken or that is not intended to be taken;

    c. Defendant communicated or threatened to communicate to credit reporting agencies credit information known, or which should be known to be false, including failing to communicate that the debt is disputed.

61. As a direct and proximate result of the above wrongful acts and such others as may be shown at trial, damages were inflicted upon Plaintiff.

62. Judgment should be granted against Defendant for actual damages and such penalties and attorney fees as authorized by statute, and such other relief as is just and proper.

### FOR A SECOND CAUSE OF ACTION AS TO DEFENDANT AIDVANTAGE
### (Violation of 15 USC §1681s-2(b), Failure to Conduct Proper Investigation)

63. The above allegations are repeated and realleged herein as if set forth verbatim, to the extent not inconsistent with the allegations of this cause of action.

64. The definition of a "furnisher of information" contained in the Fair Credit Reporting Act, as amended, applies to Defendant Aidvantage.

65. After being notified by the Plaintiff and the consumer reporting agencies that derogatory information was disputed by the Plaintiff, Defendant failed to conduct timely or proper investigations of the disputed information as required by 15 U.S.C. 1681s-2(b).

66. Defendant negligently and willfully re-reported inaccurate information to the consumer reporting agencies, violating the provisions regarding reinvestigation.

67. Defendant further failed to note in its reporting that the account was "disputed" as required.

68. The action and inaction of Defendant, as described herein, caused injury to Plaintiff.

69. Defendant maliciously and/or with willful intent to injure, defamed Plaintiff and invaded the legitimate expectation of privacy of the Plaintiff.

70. Besides actual or compensatory damages, a judgment should be granted to Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages under state law, and/or for willful violations of the Fair Credit Reporting Act or other applicable federal laws.

**FOR A THIRD CAUSE OF ACTION AS TO DEFENDANTS EQUIFAX, EXPERIAN and TRANS UNION**
**(Negligent Noncompliance with FCRA)**

71. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with this cause of action.

72. Defendants prepared and furnished credit reports on Plaintiff that contain false information.

73. Plaintiff notified Defendants of the reporting false information, disputed that information, and asked Defendants to correct it.

74. Despite those disputes, Defendants continued to report false information.

75. Upon information and belief, the reporting is at present false and incorrect.

76. Defendants negligently violated the FCRA, including but not limited to the requirements in 15 U.S.C. §1681b, §1681c-2, §1681e and §1681i.

77. Because of the above failure to comply with the requirements of FCRA, Plaintiff suffered and will continue to suffer actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with normal and usual activities, for which damages should be awarded in an amount to be determined by the jury.

78. The Court should further award attorney fees under 15 U.S.C. §1681o(a).

**FOR A FOURTH CAUSE OF ACTION AS TO DEFENDANTS EQUIFAX, EXPERIAN and TRANS UNION**
**(Willful Noncompliance with FCRA)**

79. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with this cause of action.
80. Defendants prepared and furnished credit reports on Plaintiff that contain false information.
81. Plaintiff notified Defendants of the reporting of false information, disputed that information, and asked Defendants to correct it. Despite those disputes, Defendants continued to report false information.
82. Defendants willfully violated the requirements of FCRA.
83. Because of the above willful violations of the FCRA, judgment should be granted for actual, statutory and punitive damages.
84. The Court should further award attorney fees under 15 U.S.C. § 1681n(a).

### FOR A FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS
### (Violation of S.C. Consumer ID Theft Protection Act – Credit Reporting)

85. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with this cause of action.
86. The definition of "consumer credit-reporting agency" as defined in S.C. Code Ann. § 37-20-110, et seq., applies to Defendants Equifax, Experian and Trans Union.
87. The definition of "person" as described in subsection (C) of the above code section applies to Defendant Aidvantage.
88. Defendants failed to handle the dispute(s) in the manner required by the above code section in one or more of these particulars:

    i. The basis for the denial;

    ii. A copy of the file of the Plaintiff as revised because of the reinvestigation, including the business name and address of any furnisher of information who was contacted in connection with that information and, if available, the telephone number of the furnisher;

    iii. A notice that, if requested by the Plaintiff, the consumer reporting agency shall provide the Plaintiff with a description of the procedure used by the consumer reporting agency to determine the accuracy and completeness of the information; and

    iv. Sufficient evidence that the information is true and accurate information as it relates to Plaintiff.

89. Defendants violated the above code section by failing to provide Plaintiff with a copy of the report following dispute.

8

90. Defendants violated the above code section by failing to correct the admitted inaccuracy and informing any person who in the last six months has previously received a copy of the report of its inaccuracy, if requested.

91. Defendants, by failing to reinvestigate the inaccuracy as required by law, and by failing to provide sufficient evidence that the information is true and correct, willfully violated the above code section.

92. As a direct and proximate result of the above violations, Plaintiff may recover, besides any other penalty, three times actual damages or three thousand dollars per violation, plus attorney's fees and costs, and enhanced damages and penalties for the knowing, willful and/or reckless violation of the above code section.

### PRAYER FOR RELIEF

WHEREFORE, the prayer of the Plaintiff is for judgment in an amount sufficient to compensate Plaintiff for actual damages, with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

DAVE MAXFIELD, ATTORNEY, LLC

s/ David A. Maxfield
Dave Maxfield, Esq., SC Bar 7163
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

November 11, 2025

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF GREENVILE<br><br>CHAD CHRISTIAN COUSINS,<br>　　　　　　　　　　Plaintiff,<br>Vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, EXPERIAN INFORMATION SOLUTIONS, INC. and MAXIMUS EDUCATION, LLC d/b/a AIDVANTAGE,<br><br>　　　　　　　　　　Defendants. | IN THE COURT OF COMMON PLEAS<br>THIRTEENTH JUDICIAL CIRCUIT<br><br>Case No. 2025-CP-23-07520<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned employee of Dave Maxfield, Attorney, LLC do hereby swear and affirm that on **November 17, 2025,** I served the foregoing **Summons & Complaint**, by sending a copy of same by United States Mail, Certified, Return Receipt, to the following:

CORPORATION SERVICE COMPANY
100 Coastal Drive, Suite 210
Charleston, South Carolina  29492
*(on behalf of Equifax Information Services, LLC)*

CT Corporation System
2 Office Park Court Ste 103
Columbia, SC 29223
*(on behalf of Experian Information Solutions, Inc.)*

The Prentice Hall Corporation Company
100 Coastal Drive, Suite 210
Charleston, South Carolina  29492
*(on behalf of Trans Union LLC)*

Corporation Service Company
100 Coastal Drive, Ste. 210
Charleston, SC 29492
*(on behalf of Maximus Education, LLC d/b/a Aidvantage)*

　　　　　　　　　　DAVE MAXFIELD, ATTORNEY, LLC
　　　　　　　　　　s/ David A. Maxfield
　　　　　　　　　　_____
　　　　　　　　　　Dave Maxfield, Esq., SC Bar No. 7163
　　　　　　　　　　P.O. Box 11865
　　　　　　　　　　Columbia, SC 29211
　　　　　　　　　　(803) 509-6800
　　　　　　　　　　(855) 299-1656 (fax)
　　　　　　　　　　dave@consumerlawsc.com

DATED: November 17, 2025

**CERTIFIED MAIL**™

Dave Maxfield, Attorney, LLC
PO Box 11865
Columbia SC 29211-1865



USPS CERTIFIED MAIL

9214 8901 4298 0434 6776 95

VIA CERTIFIED MAIL
CORPORATION SERVICE COMPANY
100 Coastal Drive, Suite 210
Charleston SC 29492